<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BERNARD STERN, Derivatively on Behalf of Nominal Defendant QUEST DIAGNOSTICS, INC.,**<br><br>                    **Plaintiff,**<br>v.<br><br>**JOHN C. BALDWIN, et al.,**<br><br>                    **Defendants,**<br><br>   and<br><br>**QUEST DIAGNOSTICS, INC.,**<br><br>                    **Nominal Defendant.** | Civil Action No. 09-4167 (WJM)<br><br><u>**REPORT AND RECOMMENDATION**</u> |

**Falk, U.S.M.J.**

This matter comes before the Court on Plaintiff's application to remand this case to state court [CM/ECF Docket No. 6]. Pursuant to Fed. R. Civ. P. 78, the Court did not hear oral argument. For the reasons that follow, it is respectfully recommended that Plaintiff's motion to remand be **granted**.

### BACKGROUND

Plaintiff, a shareholder of Quest Diagnostics, Inc. ("Quest"), brought this derivative action in the Superior Court of New Jersey for breach of fiduciary duties and waste of corporate assets against the directors and officers of Quest and Nichols Institute Diagnostics, Inc. ("NID"), Quest's

wholly-owned subsidiary. Defendants removed the case to this Court. Plaintiff now seeks remand.

Quest provides laboratory tests for the medical community. NID functioned as Quest's test kit manufacturing subsidiary. The problems that led to this action stem from NID's sale of allegedly inaccurate diagnostic test kits ("test kits") to laboratories from approximately 2002 until 2006. The labs used the test kits to measure certain hormone levels in blood samples, including the parathyroid hormone. In 2004, Thomas Cantor, the head of Scantibodies Laboratories, Inc. ("the Relator") filed a *qui tam* suit in the United States District Court for the Eastern District of New York under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733. The *qui tam* complaint alleged that as a result of inaccurate and falsely elevated test results, laboratories submitted false claims for reimbursement to the Veterans Administration and other federal programs. Additionally, medical providers submitted false claims for reimbursement after unnecessarily prescribing certain therapies when relying on the incorrect results provided by the test kits.

In October of 2004, the U.S. Department of Justice ("DOJ") intervened in the *qui tam* suit, issuing subpoenas for NID's records. Four years later, Quest, in conjunction with NID, reached a global agreement with the DOJ to resolve the array of problems caused by the defective tests. The agreements between Quest and the DOJ are outlined below.

First, on April 15, 2009, NID pleaded guilty to one felony count of introducing into interstate commerce a device that they misbranded with the intent to defraud or mislead, in violation of the Federal Food and Drug Act ("FDAC"), 21 U.S.C. §§ 331(a), 333(a)(2). Specifically, the criminal charge alleged that beginning in May 2000 NID was aware that its new test kits were providing unreliable, elevated results that could lead to the misdiagnosis of hyperparathyroidism (the treatment of which included surgical removal of the parathyroid gland and providing medications and

supplements). Pursuant to the plea agreement, Quest paid a fine of $40 million.

Second, Quest and NID entered into a settlement agreement with the DOJ on behalf of the Relator and certain federal agencies. The government contended that as a result of the faulty test kits Defendants submitted or caused to be submitted claims for payment to the Medicare Program, the Medicaid Programs, the TRICARE program, the Federal Employees Health Benefits Program, and the [VA] Program. (Compl. ¶ 40.) Pursuant to the settlement agreement, Quest paid $262,000,000 plus interest to the government.[1]

Third, Quest entered into a Corporate Integrity Agreement ("CIA") with the Department of Health and Human Resources' Office of Inspector General. The stated purpose of the CIA is to ensure that Quest complies with the statutes, regulations, and directives of the health care related federal programs that were implicated in the settlement agreement with the DOJ. (Compl. ¶ 41.) The CIA required, among other things, that Quest appoint a Compliance Officer, who is to monitor the corporation; that it establishes a Code of Conduct and training for its employees; and that Quest create a system that guarantees federal health programs are complied with. Id.

Finally, Quest entered into a another settlement agreement with certain Medicaid participating states whereby it paid $6.2 million to resolve issues related to the possible violation of Medicaid.

**The Complaint**

The complaint in this case asserts two counts against the directors and officers of Quest and NID ("Defendants"): (1) That they "intentionally and/or recklessly breached their fiduciary duties

---

[1] The Relator received $45,597,467 of the $262,000,000 and the pro-rata share of the actual accrued interest.

and aided and abetted one another in breaching their fiduciary duties to the Company;" and (2) That Defendants caused Quest to waste corporate assets by incurring expenses related to "legal liability and/or legal costs to investigate, defend and resolve the various criminal, civil, and regulatory proceedings arising from [Defendants'] wrongful actions." (Compl. ¶¶ 67, 72.)

The factual basis for the breach of fiduciary duties and corporate waste claims is described as a "systemic course of misconduct by Quest, NID, and the Individual Defendants," which led to the *qui tam* suit; the criminal information; the $262 million civil settlement of the False Claims allegations; the agreement to a CIA; the agreement to pay certain Medicaid programs $6.2 million to resolve claims; and the guilty plea to the felony misbranding charge and the agreement to pay a criminal fine of $40 million. (Compl. ¶ 3.) The Individual Defendants are accused of acting intentionally and/or recklessly, by *inter alia* failing to meet specific responsibilities and ignoring "red flags" of egregious wrongdoing. (Compl. ¶ 51.) Following more detailed allegations of the defendants' wrongdoing, the complaint alleges that certain Individual Defendants' actions:

> represent[] a systemic pattern of wrongful conduct and, therefore a lack of good faith . . . and has exposed Quest to costly litigation and investigations, product discontinuation, termination of its profitable NID operation, a substantial criminal fine, enormous civil settlements, disallowance and recoupment of costs by the Government, loss of good will, attorneys' fees, and other major expenses.

(Compl. ¶ 52.) Plaintiff sums up its claims as follows, "[o]verall, the Company agreed to pay more than $300 million for its misconduct, all of which could, and should, have been prevented had the Individual Defendants complied with their fiduciary duties." (Compl. ¶ 3.)

## DISCUSSION

### A. Standard of Review

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases

shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Id.  The party removing the action bears the burden of establishing federal jurisdiction.  Penn v. Wal-Mart Stores, Inc., 116 F. Supp. 2d 557, 561 (D.N.J. 2000) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).  Removal statutes are "strictly construed against removal and all doubts should be resolved in favor of remand."  Boyer, 913 F.2d at 111 (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

**B. "Arising Under" Jurisdiction Under Grable and Empire Healthchoice**

Defendants must demonstrate that the Court has federal question jurisdiction over Plaintiff's claims.  Title 28 U.S.C. § 1331 vests federal district courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689 (2006) (quoting 28 U.S.C. § 1331).  Whether federal question jurisdiction exists is determined by examining the plaintiff's well-pleaded complaint.  See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986).  "A case 'arises under' federal law within the meaning of § 1331 . . . if the 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  Id. at 689-90.

The complaint asserts only state law causes of action.  However, Defendants contend that the Court nevertheless has "arising under" jurisdiction because it must decide a substantial and disputed federal issue, thus establishing federal question jurisdiction.  Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983).

The Supreme Court has stated the following standard for determining whether there is

"arising under" federal jurisdiction when a federal claim is embedded in a state law cause of action: "[T]he question is, does a state law claim necessarily raise a stated federal issue actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).

Grable was a quiet title action filed in state court that was removed to federal court. The Court found that the plaintiff premised its superior title claim on a disputed federal issue that was an "essential element" of the action -- namely, whether the IRS failed to give adequate notice pursuant to federal law. Id. at 314-15. Indeed, the intepretation of the federal law was the only factual or legal issue in dispute in the case and one in which the federal government had a "direct interest in the availability of a federal forum to vindicate its own administrative action . . . ." Id. at 315. Furthermore, the Court found that no congressional approved balance of federal and state judicial responsibilities would be disturbed since it would be an extraordinarily rare case when a state law quiet title action raised a substantial and disputed federal issue. Id.

In 2006, the Supreme Court further limited Grable and made it far more difficult to establish federal jurisdiction based on the Grable theory. In Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677 (2006), the Supreme Court confirmed that Grable only applies when there is a "pure issue of law . . . that could be settled once and for all and thereafter . . . ." Id. at 700. The Court further explained that Grable is meant to apply only when the federal element in a state law claim "qualifies as 'substantial' and its resolution" would not only be dispositive of the case but would be controlling in other cases. Id. Thus, in any given case, there must be more than a federal element "to open the arising under door." Id. The Court contrasted Grable with Empire Healthchoice, a case

6

that was "fact-bound and situation-specific" and thus concluded that Empire Healthchoice was "poles apart" from Grable.  Id. at 701.  The Court also noted that a state court is fully competent to apply federal law to the extent it is relevant.  Id.

In the wake of Empire Healthchoice, Grable jurisdiction has been described as "narrow and unusual."  Brown v. Organon USA, Inc., No. 07-3092, 2008 WL 2625355, at *4 (D.N.J. June 27, 2008).  As the Supreme Court explained, it must be necessary to decide a truly substantial and dispositive question of federal law in order to "squeeze[] into the slim category Grable exemplifies." Empire Healthchoice, 547 U.S. at 701; see also Stout v. Novartis Pharm. Corp., No. 08-856, 2009 WL 4576130, at *2 (D.N.J. Nov. 30, 2009) (finding that Grable requires a substantial dispute over the "validity, construction, or effect of federal law").

## C. Analysis

Defendants argue that the central issue in the case is whether Quest violated the federal False Claims Act.  But that is just not so.  If it is an issue at all, which is questionable, it is not a substantial issue and certainly nowhere near the central issue in the case.  The focus of the case is the purely state law claims of whether Defendants' actions and inactions violated their fiduciary duties and wasted corporate assets.  In other words, does Defendants' conduct in leading up to and reacting to the undisputed problems with the government constitute a breach of fiduciary duty and waste of corporate assets under state law?  The complaint repeatedly details the undisputed facts upon which Plaintiff bases its claims:

- the guilty plea to a felony and the resulting $40 million fine
- the $262 million payment to the government to resolve complaints
- the $6.2 million payment to various Medicaid programs to resolve claims

7

- the agreement to a complex Corporate Integrity Agreement with expensive oversight

- termination of its profitable NID operation

- disallowance and recoupment of costs by the government

- loss of good will, attorneys' fees, and other expenses associated with everything described above.

Plaintiff categorically denies that his case "centers" on the FCA claim. (Reply Br. 3-4.) Plaintiff accurately states that the case concentrates on Defendants' conduct in allowing problems to occur and in not responding to them. See id. Indeed, any reference in Plaintiff's complaint to alleged violations of the FCA is, at most, tangential and plainly not the central focus of the complaint. As stated by Plaintiff:

> The FDCA criminal plea and fine, the CIA, and the agreement with the Medicaid participating states were separate from the settlement of the FCA claims; in fact, the CIA was explicitly a condition precedent to the FCA settlement agreement. . . . [A] criminal plea and $40 million dollar criminal fine, a CIA that will cost the Company millions of dollars to implement, and a $6.2 million settlement with the Medicaid participating states . . . are more than sufficient by themselves to establish that Defendants violated their fiduciary duties under state law . . . .
> . . . .
>
> . . . **[T]here are no federal issues with respect to the FDCA guilty plea and the $40 million criminal fine, the CIA expenses, and the $6.2 million settlement with the Medicaid participating states, which are by themselves sufficient to base Plaintiff's derivative claims for breach of fiduciary duty and waste of corporate assets.**

(Id. at 4-5.)

A searching review of the well-pleaded complaint makes clear that any federal issue that may exist as to a violation of the FCA is not substantial and disputed as required by Grable and Empire Healthchoice. If an issue at all, it is incidental, and, if necessary could be decided by a state court.

8

Thus, this case, like Empire Healthchoice, is "poles apart" from Grable. It is rather obvious that the two state law claims could be fully resolved without ever getting to whether Defendants violated the FCA.[2]

A well-reasoned case from New Jersey, Fagin v. Gilmartin, No. 03-2631, 2007 WL 419286, at *4 (D.N.J. Feb. 1, 2007), is on point. In Fagin, Judge Chesler remanded a case when merely one of the facts supporting the plaintiff's state law claims was an alleged violation of federal securities laws. Fagin was an unjust enrichment and breach of fiduciary duty action for violations of securities laws. Id. at *1. Defendants removed the action because the state law claims involved the violation of federal securities laws. Id. at *4. The Court held; "[t]hat a court may be called upon to evaluate the offending conduct in light of what federal securities laws and regulations require does not federalize the claims for unjust enrichment [and] breach of fiduciary duty . . . ." Id. The focus of the case was not whether the alleged conduct rose to the level of a violation of federal securities laws but rather resolution of the underlying state law claims, which did not depend on any interpretation

---

[2] Defendants base their fanciful Grable FCA claim entirely on a Delaware Court of Chancery case In re Caremark Int'l, Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996). Defendants claim Caremark holds that entry of a settlement with the government does not constitute a breach of fiduciary duty. Thus, Defendants assert an essential element of Plaintiff's claim is proof Defendants violated the FCA. This is incorrect and entirely irrelevant to this motion. At issue in Caremark was whether a proposed settlement in that particular derivative action was fair and reasonable. Id. at 960-61. Ultimately, the trial court Chancellor found that the record (in that case) did not show an intentional violation of the law by Caremark directors and, thus (in that case), no breach of fiduciary duty. Id. at 961. The Chancellor repeatedly explained that the decision approving the settlement was based on the facts of that "fact-bound and situation-specific" case. If Caremark has any relevance, it supports remand in that it was a Delaware trial court decision that never even mentioned federal law or jurisdiction -- like the instant case, a state law claim.

of federal securities laws. Id. at *5.[3]

Since Defendants have so utterly failed to demonstrate their basic entitlement to Grable jurisdiction, it is not necessary to address in detail the other formidable Grable prerequisites. Suffice it to say, this case is "fact-bound and situation-specific" and not a searchlight for future cases. See Singh v. Duane Morris LLP, 538 F.3d 334, 339 (5th Cir. 2008) (finding federal jurisdiction inappropriate where the federal issue did not require resolution of an important question of law but was predominantly one of fact); Bennett v. Sw. Airlines Co., 484 F.3d 907, 910 (7th Cir. 2007) ("What the Court said about Grable and Empire Healthchoice can be said here too. We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of federal law."); Stout v. Novartis Pharm. Corp., No. 08-856, 2009 WL 4576130, at *2 (D.N.J. Nov. 30, 2009) ("If the dispute is about the facts or state law, then the federal interest in hearing the case simply does not exist.").

Finally, federal jurisdiction here would be inconsistent with congressional mandates about the division of labor between state and federal courts. Allowing jurisdiction here -- where there is, at best, an obscure federal element -- would create a new and potentially prolific category of

---

[3] Many other district courts have also found that even where allegations of a violation of federal law alone provide a potential factual basis for the state law claim federal jurisdiction is not appropriate. See Ekas v. Burris et al., Nos. 07-61156, 07-61157, 2007 WL 4055630, at *4 (S.D.Fla. Nov. 14, 2007) (concluding that the allegations of a federal violation provide factual basis for the state law claims) (citing Gobble v. Hellman, 2002 U.S. Dist. LEXIS 26833, at *8 n. 1 (N.D.Ohio Mar. 26, 2002)); In re Textainer Partnership Securities Litigation, 2005 WL 1791559, at *8 (N.D.Cal. July 27, 2005) (finding that plaintiff need not prove any alleged violation of securities laws in order to prevail on his state law claim for breach of fiduciary duty); Young v. Antiocco, 2003 WL 23201342, at *2 (N.D.Tex. Aug. 6, 2003) ("[T]he alleged securities law violations serve solely to illuminate the alleged waste and breach of fiduciary duty for which [the plaintiff] sues on behalf of [the corporation]. The federal securities laws do not create the causes of action . . . ." But "[i]nstead, the fact that they were violated gives rise to [plaintiff's] causes of action under state law.").

removable actions that have no business in the federal courts.

### D. Attorneys' Fees

Plaintiff seeks an award of costs and fees pursuant to 28 U.S.C. § 1447(c) that provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision as to whether to award costs lies within the broad discretion of the Court. See Siebert v. Norwest Bank Mn., 166 Fed. Appx. 603, 606-07 (3d Cir. 2006). While this Court ultimately has determined that remand is proper, there is no justification for an award of costs. See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

### CONCLUSION

For these reasons, it is respectfully recommended that Plaintiff's motion to remand be granted and the request for an award of costs be denied.

    /s/ Mark Falk
**MARK FALK**
**United States Magistrate Judge**