

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
   JUDGE

# LETTER OPINION

March 24, 2010

Gary S. Graifman
Kantrowitz, Goldhamer & Graifman, Esqs.
210 Summit Avenue
Montvale, New Jersey  07645

   (*Attorney for Plaintiff*)

Michael R. Griffinger
James M. Lee
Jonathan Steven Liss
Gibbons, P.C.
One Gateway Center
Newark, New Jersey  07102

David Louis Barnes
Seth R. Goldman
Mintz Levin Cohen Ferris Glovsky & Popeo P.C.
The Chrysler Center
666 Third Avenue
New York, New York  10017

   (*Attorneys for Defendant*)

   **RE:   Stern v. Baldwin, et al.**
           **Civ. No. 09-4167 (WJM)**

Dear Counsel:

This matter comes before the Court on Plaintiff Bernard Stern's motion for remand, pursuant to 28 U.S.C. § 1447(c).  Magistrate Judge Mark Falk entered a Report and Recommendation on January 7, 2010 in favor of granting Plaintiff's motion. Defendants filed objections to the Report and Recommendation. There was no oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions and a *de novo* review of the Report and Recommendation, the Court agrees with Magistrate Judge Falk's findings and conclusions. Accordingly, Plaintiff's motion for remand is **granted**.

## I.     BACKGROUND

As the Report and Recommendation accurately lays forth the full background and procedural history of this case, the Court recites only the following relevant facts pertaining to its *de novo* review.  On June 9, 2009, Plaintiff Bernard Stern, a shareholder of Quest Diagnostics, Inc. ("Quest"), filed a derivative suit against the directors and officers of Quest and its wholly-owned subsidiary Nichols Institute Diagnostics, Inc. ("NID") in the Superior Court of New Jersey.  The Complaint asserts two claims under state law: breach of fiduciary duty and waste of corporate assets.

These claims are based on alleged and admitted misconduct by Quest and NID.  The latter  manufactured and marketed faulty medical test kits to various U.S. laboratories.  The faulty results caused the submission of false claims for reimbursement to federal healthcare providers and the Veterans Administration.  Then, in April 2004, the CEO of one of these laboratories ("the Relator") brought a *qui tam* action under the False Claims Act ("FCA"). In October 2004, the United States intervened, and in October 2008 the parties reached an agreement:

- NID pled guilty to one count felony misbranding and paid a $40 million fine;
- Quest and NID agreed to pay $262 million to the government and the Relator to settle the *qui tam* action;
- Quest entered into a detailed and lengthy five-year Corporate Integrity Agreement with oversight provisions, possibly totaling tens of millions;
- Quest agreed to the disallowance and recoupment of certain costs incurred in its government contracts, likely totaling in the millions; and
- Quest entered into a separate $6.2 million agreement with certain Medicaid participating states.

The instant suit alleges breach of fiduciary duty and waste of corporate assets on the basis of these terms. On August 13, 2009, Defendants removed this action to federal court. On September 11, 2009, Plaintiff filed a timely motion to remand. Magistrate Judge Falk has submitted a Report and Recommendation, recommending that the motion to remand be granted and that the request for attorneys' fees be denied.

On January 20, 2010, Defendants filed the instant objections to Magistrate Judge Falk's Report and Recommendation, pursuant to Federal Rule of Civil Procedure 72(b). Now, this Court is charged with making "a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2).

## II.    DISCUSSION

Defendants assert that Plaintiff must prove a violation of the False Claims Act in order to succeed on its breach of fiduciary duty and waste claims. As such, Defendants contend that whether a violation occurred is a contested and dispositive federal issue requiring this Court's attention. This argument, however, calls for a much broader reading of "arising under" jurisdiction than authorized by recent Supreme Court precedent. Remand is therefore appropriate.

### A.    **Remand Standard**

Under 28 U.S.C. § 1447(c), a case should be remanded if the District Court lacks subject matter jurisdiction. The burden is on removing party to show the case belongs in federal court. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Removal statutes should be "'strictly construed against removal and all doubts . . . resolved in favor of remand.'" *Boyer*, 913 F.2d at 111 (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987)).

### B.    **"Arising Under" Jurisdiction and** *Grable*

Absent diversity jurisdiction or a claim arising under federal law, the Supreme Court has held that federal jurisdiction will lie only when the complaint presents an actually disputed and substantial federal issue, the resolution of which, in federal court, would not upset any congressionally recognized state-federal balance under 28 U.S.C. § 1331. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005).

In *Grable*, the Court sustained federal jurisdiction over a state-law quiet title claim, in which the central issue was the validity of Respondent Darue's record title. *Id.* at 310. To satisfy Petitioner Grable's tax delinquency, the Internal Revenue Service ("IRS") seized the real property at issue and then sold it to Darue. *Id.* Under 26 U.S.C. § 6335, the IRS was required to give Grable notice of the seizure; however, Petitioner Grable later brought a quiet title action in state court, asserting that Darue's record title was invalid because the Internal Revenue Service had seized the parcel without giving the requisite notice under § 6335(a). Darue removed the action to federal court as presenting a federal question, stating that the title claim depended on the interpretation of the notice provision in the federal tax law. *Id.* at 311. The Supreme Court agreed. The Court found that notice was an "essential element" of the claim, that the federal statute's meaning was "actually in dispute," and that it was "the only legal and factual issue contested." *Id.* at 315.

A year later, the Supreme Court further limited *Grable*. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). In *Empire*, a health insurance carrier for federal employees brought suit in federal court, seeking reimbursement of benefits paid to an insured following the settlement of a state court tort action, in which the insured received damages from parties at fault. *Id.* at 683. The Supreme Court found that federal jurisdiction was unavailing, since the claim was "triggered, not by the action of any federal department, agency, or service [as in *Grable*], but by a personal-injury action launched in state court." *Id.* at 700. Whereas the dispute in *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute," *Id.*, the action brought in *Empire* was "poles apart," as it centered on the share of a state court tort settlement properly payable to the insurance provider. *Id.* at 701.

### C.     Remand is Appropriate in the Instant Case

The parties to the instant action do not need, and the consistency of federal law does not require, this Court to resolve whether Quest violated the FCA in order that they may litigate Plaintiff's two state-law causes of action. As diversity is not at issue and the claims do not arise under federal law, the case must be remanded.

Plaintiff's well-pleaded complaint asserts purely state law claims, centering on whether Defendants' actions and inactions violated their fiduciary duties and wasted corporate assets. While Defendants attempt to collapse these shareholder derivative claims into an FCA determination to create federal jurisdiction, this assertion mischaracterizes the nature of Plaintiff's allegations. As Judge Falk properly emphasized in his Report and Recommendation:

4

> There are no federal issues with respect to the FDCA guilty plea and the $40 million criminal fine, the CIA [Corporate Integrity Agreement] expenses, and the $6.2 million settlement with the Medicaid participating states, which are by themselves sufficient to base Plaintiff's derivative claims for breach of fiduciary duty and waste of corporate assets.

(Report and Recommendation at 7).

The issue of an FCA violation represents no "dispositive and contested federal issue … at the heart of" Plaintiff's claims. *Grable*, 545 U.S. at 320. Moreover, the centrality of the claims hinges on "Defendants' conduct in allowing problems to occur and in not responding to them." (Report and Recommendation at 8.) Proving an FCA violation is incidental, if at all necessary.

The Supreme Court held in *Empire* that "fact-bound and situation-specific" state claims cannot be "squeezed into the slim category *Grable* exemplifies." *Empire*, 547 U.S. at 701. This, however, is precisely what Defendants seek to do. *Grable* involved a pure issue of federal law – the construction of a notice provision in the federal tax code – which was the sole issue in the case and would control the disposition of many other cases. The instant case raises no such "pure issue of federal law"; instead, this is a garden variety shareholder derivative suit, which will depend heavily on its facts. Here, the FCA is not an "essential element" of the claim, that the federal statute's meaning is not "actually in dispute," and it is not "the only legal and factual issue contested." *Grable*, 545 U.S. at 315. Thus, remand is appropriate.

### D.     Costs and Attorneys' Fees

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision whether to award fees and costs lies in the Court's discretion. *See Siebert v. Norwest Bank Mn.*, 166 Fed. Appx. 603, 606-07 (3d Cir. 2006) (noting that "Section 1447(c) grants district courts broad discretion in determining whether to award fees following a remand."). The Supreme Court has counseled that "the standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* Since *Grable* and *Empire* are of recent vintage, the Court finds that an award of attorneys' fees would be inappropriate against Defendants for testing the *Grable-Empire* contours. While the Court disagrees with Defendants' position, this position

was not objectively unreasonable.  As such, there is no justification for an award of fees and costs.

## II. CONCLUSION

For the foregoing reasons, the Court shall **ADOPT** Judge Falk's Report and Recommendation and shall **REMAND** this action to the Superior Court of New Jersey.  An Order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**